IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-2117 JWL |
| ) | 06-20141 JWL |
| ) | |
| MARCOS ANTONIO NUNEZ-RAMOS, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

## **MEMORANDUM AND ORDER**

In February 2007, Marcos Nunez-Ramos pleaded guilty to one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). In the plea agreement executed by Mr. Nunez-Ramos, he waived his right to appeal or collaterally attack any matter in connection with his prosecution, conviction and sentence, including his right to file a motion pursuant to 28 U.S.C. § 2255, except as limited by *United States v. Cockerham*, 237 F.3d 1179 (10th Cir. 2001). In June 2008, Mr. Nunez-Ramos was sentenced to a 235-month term of imprisonment.

In March 2009, Mr. Nunez-Ramos filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. # 56). In his motion to vacate, Mr. Nunez-Ramos asserts that he received ineffective assistance of counsel in connection with the

1

plea process because counsel failed to read or explain the plea agreement to him.[1] Mr. Nunez-Ramos further contends that his counsel was ineffective at sentencing because his attorneys did not discuss the Presentence Investigation Report ("PSR") with him, there were "charges" in the PSR he should not have been held responsible for, and his attorneys failed to investigate the additional charges. Moreover, Mr. Nunez-Ramos alleges the following errors: (1) although the Court inquired whether Mr. Nunez-Ramos had reviewed the PSR with his counsel, the Court failed to verify whether counsel had read and discussed the PSR with him, in violation of Fed. R. Crim. P. 32(i)(1)(A), (2) the court reporter intentionally made a false statement by stating that Mr. Nunez-Ramos had an interpreter when he did not, (3) the probation officer knowingly and intentionally provided the Court with false information that resulted in an enhancement of his sentence, by placing inaccurate information in the PSR, (4) the Court improperly utilized the PSR because the Court knew it contained inaccurate information, and (5) Mr. Nunez-Ramos objected to certain matters within the PSR but the Court failed to hold a scheduled hearing on the issues, and the matters were not raised again at sentencing, resulting in a sentence based upon inaccurate information. In response to these claims, the government contends that Mr. Nunez-Ramos waived each of the claims asserted in his § 2255 motion

---

[1] Several attorneys represented Mr. Nunez-Ramos during the time between his arrest and sentencing. He appears to assert ineffective assistance of counsel as to two of the lawyers: (1) the lawyer he initially retained and who represented him during the plea proceedings, Mr. Paul Serrano, and (2) the appointed lawyer at the time of his sentencing, Mr. David Kelly. However, Mr. Nunez-Ramos did not explain which claims he asserted against which particular attorneys. The Court will therefore proceed as if the particular claim of ineffective assistance was asserted against the lawyer representing him at the time period in question.

in the plea agreement—a wavier that the government moves to enforce (doc. # 61).  In addition, the government asserts that even if Mr. Nunez-Ramos did not expressly waive his claim of ineffective assistance with respect to the plea negotiations, the claim does not satisfy the two-prong test enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  In response to the government's motion to enforce, Mr. Nunez-Ramos asserts that he did not enter into the waiver contained within the plea agreement knowingly or voluntarily because his counsel did not explain the plea agreement to him, the court failed to ensure counsel had explained it to him,[2] and he could not understand or hear what occurred at the plea hearing because he was medicated.[3]  He also asserts that enforcement of the waiver would result in a miscarriage of justice because neither his counsel nor the court explained the plea agreement to him to ensure he understood the rights he waived in it.

As explained below, the Court concludes Mr. Nunez-Ramos's ineffective assistance claim concerning his plea does not satisfy *Strickland v. Washington*, that enforcement of the waiver does not result in a miscarriage of justice, and that he validly

---

[2] During the plea colloquy, the Court undertook an extensive discussion with Mr. Nunez-Ramos of the paragraph in the plea agreement containing the waiver of rights to appeal and collateral attack, including an explanation of claims under § 2255 and the waiver in the plea agreement of the right to bring such claims.  Mr. Nunez-Ramos stated that he understood he waived his right to appeal or collaterally attack his sentence and that he was willing to do so.

[3] During the plea hearing, the Court asked Mr. Nunez-Ramos whether he was "under the influence of any drug or medication or anything at all which could affect [his] ability to understand" what was happening that day.  Doc. #28 at 3-4.  Mr. Nunez-Ramos replied that he was not.  He nonetheless contends that his attorney advised him to respond that he was not medicated even though he allegedly knew Mr. Nunez-Ramos was medicated at the time.

waived the remaining claims regarding sentencing errors pursuant to the plea agreement. Thus, Mr. Nunez-Ramos's petition is denied in part and dismissed in part and the government's motion to enforce is granted.

The court will hold a defendant and the government to the terms of a lawful plea agreement. *United States v. Arevalo-Jimenez*, 372 F.3d 1204, 1207 (10th Cir. 2004); *United States v. Atterberry*, 144 F.3d 1299, 1300 (10th Cir. 1998). Thus, a knowing and voluntary waiver of § 2255 rights in a plea agreement is generally enforceable. *United States v. Cockerham*, 237 F.3d 1179, 1181 (10th Cir. 2001). The Tenth Circuit has adopted a three-pronged analysis for evaluating the enforceability of such a waiver in which the court must determine: (1) whether the disputed issue falls within the scope of the waiver, (2) whether the defendant knowingly and voluntarily waived his rights, and (3) whether enforcing the waiver would result in a miscarriage of justice. *See United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam), *cert. denied*, 129 S. Ct. 212 (2008).

*Scope of the Waiver*

In determining whether the disputed issue falls within the scope of the waiver, the court begins with the plain language of the plea agreement. *United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004); *Hahn*, 359 F.3d at 1328. The provision in the plea agreement by which Mr. Nunez-Ramos waived his right to challenge his sentence through collateral attack states as follows:

Defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence. The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed.  By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court.  The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to: a motion brought under Title 28, U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)] and a motion brought under Title 18, U.S.C. § 3582(c)(2).  In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court.

The plea agreement is construed "according to contract principles and what the defendant reasonably understood when he entered his plea." *Arevalo-Jimenez*, 372 F.3d at 1206 (internal quotation and citations omitted).  The court strictly construes the waiver and resolves any ambiguities against the government and in favor of the defendant. *Hahn*, 359 F.3d at 1343.

Mr. Nunez-Ramos waived his right to collaterally attack a sentence within the guideline range through a § 2255 motion, except for claims of ineffective assistance of

counsel related to the negotiation of the plea or waiver under *United States v. Cockerham*. *Cockerham*, 237 F.3d at 1183.  Therefore, Mr. Nunez-Ramos clearly waived the right to raise his claim of ineffective assistance at sentencing and his other claims of error during the sentencing process.  These claims bear on Mr. Nunez-Ramos's sentence and do not involve the validity of his plea or waiver.  However, his claim of ineffective assistance concerning the plea agreement and waiver more arguably falls within the exception in *United States v. Cockerham* and the Court discusses that claim more fully below.

*Knowing and Voluntary*

For a waiver to be enforceable, the defendant must have knowingly and voluntarily waived his appeal rights.  *Hahn*, 39 F.3d at 1325.  Mr. Nunez-Ramos contends that his waiver of rights was neither knowing nor voluntary because his attorneys did not explain the waiver to him, the Court did not ensure he understood the content of the waiver or the consequences of it, and he could not in any event understand the plea colloquy because he was in pain, medicated for an ear infection, and did not have the benefit of an interpreter.  In determining whether an appellate waiver was made knowingly and voluntarily, the Court looks primarily to two factors: whether the plea agreement states that the defendant entered the agreement knowingly and voluntarily and whether there was an adequate Rule 11 colloquy.  *Hahn*, 359 F.3d at 1325.

Both conditions are satisfied here.  The plea agreement signed by Mr. Nunez-Ramos states that he "knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence."[4]  *See United States v. Leon*, 476 F.3d 829, 834 (10th Cir. 2007) (concluding that a defendant did not meet the burden of showing that the waiver was unknowing and involuntary in part because plea agreement contained broad waiver that defendant "knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence").  Moreover, Mr. Nunez-Ramos acknowledged in the agreement that he entered into the agreement and pled guilty "freely and voluntarily."[5]

In addition, during the plea colloquy, the Court inquired into whether Mr. Nunez-Ramos understood the terms of the plea agreement, including the waiver provision, and explained to Mr. Nunez-Ramos the consequences of the waiver provision.  The record thus flatly contradicts Mr. Nunez-Ramos's assertions that the Court failed to do so.[6]  Mr.

---

[4] Doc. # 18 at 6-7.

[5] Doc. #18 at 9.

[6] Mr. Nunez-Ramos asserts, for example, that the Court did not ask him whether he understood the meaning of the terms "collateral attack," "§ 2255 motion" or "habeas corpus."  However, the Court did in fact explain the meaning of such terms in explaining to Mr. Nunez-Ramos that he waived his rights to collaterally attack the sentence under the terms of the plea agreement: "[a]nother way in which a person might be able to challenge his or her sentence in federal court is through what's called a collateral attack.  Now, we typically see that through the vehicle of a Section 2255 petition or motion, but sometimes it's referred to as habeas corpus, or it goes by other kinds of names.  In any event, it's a process in which a person can come back into federal court and ask to have their sentence reviewed, claim that it was illegal or unconstitutional or that sort of thing."  Doc. # 28 at 17.  The Court then explained to Mr. Nunez-Ramos that he waived the right

Nunez-Ramos also acknowledged that he understood the waiver and was willingly waiving his rights to appeal or collaterally attack the sentence imposed as part of the plea agreement. His affirmation in court of his understanding of the waiver and willing acceptance of it carries a strong presumption of truth. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court [affirming a plea agreement] carry a strong presumption of veracity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible") (citing *Machibroda v. United States*, 368 U.S. 487, 495-96 (1962) and *Price v. Johnston*, 334 U.S. 266, 286-87 (1948), *overruled on other grounds by McCleskey v. Zant*, 499 U.S. 467 (1991). *See also United States v. Chavez-Salais*, 337 F.3d 1170, 1173 (10th Cir. 2003) (the "content of a defendant's waiver of appeal rights can be made known to him…through the colloquy with the court required by Federal Rule of Criminal Procedure 11").

Mr. Nunez-Ramos contends he could not hear or understand what was said during the plea colloquy because he was in pain, was taking medication for an ear infection, and did not understand English well to begin with. However, at no time during the Rule 11 colloquy did Mr. Nunez-Ramos request the assistance of an interpreter or in any way indicate that he was having difficulty understanding the nature of the proceedings or the questions directed to him. *See United States v. Hernandez-Martinez*, 2007 WL 3088223,

---

to bring such challenges in the plea agreement, and Mr. Nunez-Ramos confirmed that he willingly agreed to the waiver in order to receive the benefits of the plea bargain. *Id*. at 18.

at *2 (10th Cir. Oct. 23, 2007) (unpublished opinion) (rejecting defendant's argument that his appeal waiver was not knowing and voluntary because he was not a native English speaker and only understood "a bit of English"; record of plea hearing indicated full understanding of English, defendant did not request the use of a translator, and defendant never indicated difficulty understanding). Moreover, the record flatly contradicts his assertion that he could not hear or understand the proceedings. First, in response to questioning, Mr. Nunez-Ramos assured the Court he was not under the influence of any medications or anything else that could impact his ability to understand.[7] Moreover, Mr. Nunez-Ramos appropriately responded to the Court's inquiries during the colloquy. There is simply no indication from the record that he could not understand the questions posed by the Court during the hearing. Mr. Nunez-Ramos, then, has not shown that he did not understand the waiver of rights contained in his plea agreement, and the Court concludes that the waiver was knowing and voluntary.

*Miscarriage of Justice*

Enforcing a waiver results in a miscarriage of justice only if (1) the district court relied on an impermissible factor such as race, (2) the defendant received ineffective

---

[7] After the government responded to Mr. Nunez-Ramos's § 2255 petition, Mr. Nunez-Ramos replied, attaching documentation of his requests for medical care for tooth aches and ear aches, including one purportedly submitted on January 28, 2007, just days before his plea hearing. Moreover, he submitted paperwork indicating that he had access to prescription medication at the time of the hearing. However, he stated to the Court at the time of the hearing that he was not taking any medications or was otherwise under the influence of anything that would impact his ability to understand.

assistance of counsel in connection with the negotiation of the waiver, (3) the sentence exceeds the statutory maximum, or (4) the waiver is otherwise unlawful. *Hahn*, 359 F.3d at 1327. For a waiver to be otherwise unlawful, there must be an error that seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993). Mr. Nunez-Ramos has the burden to show that enforcement of the plea waiver will result in a miscarriage of justice. *United States v. Anderson*, 374 F.3d 955, 959 (10th Cir. 2004).

Mr. Nunez-Ramos contends that he received ineffective assistance of counsel because his attorney did not apprise him of the content of the plea agreement or the consequences of the waiver. The Court will construe this assertion as a claim of ineffective assistance of counsel in conjunction with negotiation of the plea. Such a situation is expressly excluded from the waiver executed by Mr. Nunez-Ramos. *See United States v. Cockerham*, 237 F.3d at 1187 (defendant cannot waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver). Nonetheless, the Court concludes Mr. Nunez-Ramos cannot establish he received ineffective assistance of counsel in negotiation of the plea agreement.

The constitutional right to effective assistance of counsel is defined in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that test, Mr. Nunez-Ramos must first demonstrate that his counsel's performance was deficient, in that it "fell below an objective standard of reasonableness." *Id*. at 688. Second, Mr. Nunez-Ramos must

demonstrate that he was prejudiced by counsel's deficient performance. In the context of a guilty plea, this requires showing a reasonable probability that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Harms*, 371 F.3d 1208, 1211 (10th Cir. 2004) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Counsel's failure to provide certain advice may serve as grounds for an ineffective assistance of counsel claim. *See United States v. Broce*, 488 U.S. 563, 574 (1988). However, Mr. Nunez-Ramos has failed to demonstrate that he suffered prejudice from the allegedly deficient performance of counsel. *See Walker v. Gibson*, 228 F.3d 1217, 1231 (10th Cir. 2000) (court need not address whether counsel's performance was deficient if petitioner cannot demonstrate prejudice), *abrogated on other grounds by Neill v. Gibson*, 278 F.3d 1044 (10th Cir. 2001). *See also United States v. Hamilton*, 510 F.3d 1209, 1216 (10th Cir. 2007) (same) (citing *Strickland*, 466 U.S. at 697), *cert. denied,* 128 S. Ct. 1922 (2008). Mr. Nunez-Ramos asserts that he lacked constitutionally sufficient counsel because his attorneys failed to explain to him the content of the plea agreement or the consequences of pleading guilty. He also contends that the Court failed to explain to him either the plea agreement or the rights he waived under it. However, Mr. Nunez-Ramos consistently affirmed his satisfaction with the advice and representation provided by his attorney, in his plea agreement and at the plea colloquy.[8] Moreover, contrary to the

---

[8] Paragraph 15 of the plea agreement states: "The defendant has had sufficient time to discuss this case, the evidence, and this agreement with the defendant's attorney and defendant is fully satisfied with the advice and representation provided by defendant's

11

assertions of Mr. Nunez-Ramos, the Court explained to him during the plea colloquy the content of the plea agreement and the consequences of the waiver, including the waiver of his right to collaterally attack the sentence.  Mr. Nunez-Ramos acknowledged that he understood the plea agreement and that he willingly entered into the plea agreement regardless of the consequences.  Mr. Nunez-Ramos therefore cannot demonstrate he was prejudiced by his attorney failing to explain to him the consequences of pleading guilty, and of the waiver in particular, because the Court fully informed him about the waiver and its effect.  *See United States v. Hamilton*, 510 F.3d at 1216-17 (holding that an attorney's failure to explain to the defendant the career-offender guidelines did not result in prejudice where the court explained the sentence could be greater than expected and explained the maximum possible penalties) (*citing United States v. Gordon*, 4 F.3d 1567, 1571 (10th Cir. 1993) and *Bethel v. United States*, 458 F.3d 711, 718-19 (7th Cir. 2006)).

Moreover, Mr. Nunez-Ramos cannot establish prejudice because he strategically chose to enter a plea of guilty in order to avoid the imposition of a mandatory life sentence in the event he was convicted of the offense after trial.  Shortly after entering his guilty plea, Mr. Nunez-Ramos sought to withdraw the plea.  However, the government had since the entry of the plea discovered additional felonies Mr. Nunez-Ramos committed.  The government explained to Mr. Nunez-Ramos that if he withdrew his plea of guilty, the government would seek to have him recharged and, if convicted, he would

---

counsel."  Doc. #18 at 8-9.  In addition, during the plea colloquy, the Court asked Mr. Nunez-Ramos whether he was "fully satisfied with the counsel, representation, and advice" given to him by his attorney.  He replied that he was satisfied.  Doc. #28 at 4.

be subjected to a mandatory sentence of life imprisonment. After this, Mr. Nunez-Ramos requested a withdrawal of his motion to withdraw his guilty plea. His counsel at the time explained to the Court that the motion to withdraw the guilty plea was being withdrawn because Mr. Nunez-Ramos did not want to face the possibility of a life sentence. Given the mandatory life sentence Mr. Nunez-Ramos would have faced in the event he had proceeded to trial and been convicted, and the likelihood a jury would have convicted him in light of the evidence against him as set out in paragraph two of his Plea Agreement (doc. #18 at 2, 3), it seems Mr. Nunez-Ramos is in a better position today than he would have been in had he chosen not to plead. *See United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002) (the determination of whether the defendant would have changed her plea had counsel provided sufficient advice depends largely upon a prediction of the outcome at trial, based on the factual circumstances) and *United States v. McGoff-Lovelady*, 2008 WL 4543833, at *3 (D. Kan. Oct. 10, 2008) (finding the defendant could not establish prejudice where she probably would not have insisted on going to trial, given the likelihood of conviction and the mandatory minimum sentence that would have been imposed). The circumstances surrounding the acceptance of the plea therefore do not support Mr. Nunez-Ramos's contention that he otherwise would not have pled guilty and would have insisted on going to trial.

Lastly, there is no other basis for concluding that enforcement of the waiver would result in a miscarriage of justice. Although Mr. Nunez-Ramos contends the Court acted in reliance upon Mr. Nunez-Ramos's race in intentionally permitting Mr. Nunez-Ramos

13

to be represented by constitutionally deficient counsel, he fails to point to anything in the record that supports his assertion, and there is nothing in the record suggesting the Court impermissibly relied upon race. In addition, the sentence did not exceed the statutory maximum and Mr. Nunez-Ramos does not contend that the waiver is otherwise unlawful. Therefore, enforcement of the waiver will not result in a miscarriage of justice.

For the foregoing reasons, the Court denies Mr. Nunez-Ramos's claim that he received ineffective assistance of counsel in connection with the negotiation of his plea. Having concluded that enforcing the waiver contained in Mr. Nunez-Ramos's plea agreement will not result in a miscarriage of justice, the Court grants the government's motion to enforce and dismisses Mr. Nunez-Ramos's claims concerning errors during sentencing.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Nunez-Ramos's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. #56) is denied in part and dismissed in part and the government's motion to enforce Mr. Nunez-Ramos's plea agreement (doc. #61) is granted.

**IT IS SO ORDERED** this 30th day of September, 2009.

<u>s/ John W. Lungstrum</u>
John W. Lungstrum
U.S. District Judge

15